## Office of the Attorney General
### State of Texas



DAN MORALES
ATTORNEY GENERAL

January 30, 1992

Honorable Temple Dickson
Chairman
Senate Economic Development
Committee
P.O. Box 12068
Austin, Texas 78711

Opinion No. DM-80

Re: Whether a municipal industrial development corporation may use funds generated by a sales tax for the purpose of acquiring, constructing, and operating a "for profit" hospital or clinic (RQ-101)

Dear Mr. Dickson:

You ask whether a for-profit hospital or clinic may be considered an "industrial facility" pursuant to the Development Corporation Act of 1979, as amended, article 5190.6, V.T.C.S.[1] The Development Corporation Act permits the creation of nonprofit industrial development corporations to act on behalf of cities, counties, or water districts as issuers of bonds to finance certain projects, as defined in the act. As the interest on the bonds, under proper circumstances, is exempt from federal income taxation, the projects financed by these bonds may receive financing

_____

[1]Your question specifies that such a hospital or clinic would be operated in a county of less than 500,000 population. A city in such a county may create an industrial development corporation subject to special provisions as provided by section 4A of the Development Corporation Act, including the levy by the city of a sales and use tax for the benefit of the corporation. However, the answer to your question turns on provisions of general applicability in the Development Corporation Act. We note, however, that the practical advantage of funding a facility through the Development Corporation Act rather than the Health Facilities Development Act is the availability under the former of the sales and use tax.

at interest rates substantially lower than the rates available with conventional financing.[2]

The projects that may be financed by the proceeds of bonds issued by an industrial development corporation are defined by section 2(10) of the Development Corporation Act. As a hospital is clearly not a transportation, waste disposal, pollution control, water supply, distribution, or warehouse facility, a hospital would only be within the act's definition of project if the legislature intended the term "manufacturing and industrial facilities" to be broad enough to encompass a hospital, or if the legislature intended that a hospital could be found by the board of directors of a development corporation to be a facility

> required or suitable for the promotion of commercial development and expansion and in furtherance of the public purposes of this Act, or for use by commercial enterprises, all as defined in the rules of the department.

Currently, to qualify as a project as defined by section 2(10), facilities required or suitable for the promotion of commercial development must be located in "blighted or economically depressed areas, development areas or federally assisted new communities located within a home-rule city or a federally designated economically depressed county of less than 50,000 persons according to the last federal decennial census." As originally enacted, the Development Corporation Act included facilities "required or suitable for the promotion of commercial or industrial development and expansion" within the definition of "project," as generally applicable to facilities wherever located. Acts 1979, 66th Leg., ch. 700, § 2, at 1676.

---

[2]The interest on such bonds may be tax exempt under provisions of the Internal Revenue Code that provide for federal income tax exemption on the obligations of states and political subdivisions thereof. 26 U.S.C. § 103. When the proceeds of such obligations are to be used in the trade or business of a person other than a governmental unit, these obligations are referred to as "private activity bonds." Federal income tax exemption for the interest on private activity bonds requires compliance with a number of provisions of the Internal Revenue Code. *See generally* 26 U.S.C. § 141, *et seq.* Some projects eligible for financing with tax exempt bonds under the Internal Revenue Code of 1954, and enumerated in the Development Corporation Act, are no longer so eligible under the Internal Revenue Code of 1986. While it appears clear that the legislature enacted the Development Corporation Act to facilitate tax exempt financing, the Development Corporation Act does not make federal tax exemption a criterion for projects to be financed by industrial development corporations. An industrial development corporation could finance a project through the issuance of taxable bonds.

In its original form, the Development Corporation Act authorized the creation of medical development corporations in addition to industrial development corporations, and included "medical research projects" as a discrete item enumerated in section 2 of the act. *Id.* While a medical research project is not synonymous with a hospital or a clinic, the inclusion of a specific authorization for such projects nevertheless indicates that the legislature considered medical facilities to be conceptually distinguishable from industrial facilities.

References to medical development corporations and medical research projects were deleted from the Development Corporation Act in 1981. Acts 1981, 67th Leg., ch. 792, at 3025. In the same act, the legislature reworked the definition of "project," limiting projects for "commercial development" to facilities in certain areas. *Id.* at 3026. In the same session, the legislature enacted the Health Facilities Development Act. Acts 1981, 67th Leg., ch. 783, at 2966 (now Health and Safety Code section 221.001, *et seq.*). The Health Facilities Development Act permits the creation of health facilities development corporations which may issue bonds on behalf of cities, counties, or hospital districts for the purpose of financing health facilities as defined in that act. Hospitals and clinics are expressly within the definition of health facilities permitted to be financed by bonds issued by health facilities development corporations, as are medical research facilities. Health & Safety Code § 221.003(8)(B), (D).[3]

The bill analysis prepared by the House Committee on State Affairs with respect to the bill that enacted the Health Facilities Development Act stated, in part, as follows:

---

[3]At the time that the Health Facilities Development Act was enacted, for-profit health facilities could take advantage of the provisions of section 103 of the 1954 Internal Revenue Code, which permitted the tax exemption on the interest of private activity bonds to apply to so-called "small issues," i.e. issues of bonds under a set dollar amount. Under that former provision, as with bonds issued by industrial development corporations, the interest on bonds issued by health facilities development corporations to finance for-profit health facilities would have been, under proper circumstances, exempt from federal income taxation, permitting financing at advantageous interest rates. Under current federal tax law for-profit hospitals may no longer qualify for the tax exemption provided for small issues. However, the Health Facilities Development Act does not make tax exemption a criterion for a project to be financed by a health facilities development corporation. Health facilities development corporations may finance projects through the issuance of taxable bonds.

## BACKGROUND INFORMATION:

Under present state law, hospital authorities and certain other public bodies are authorized to issue "tax-exempt" bonds to finance hospitals and related facilities operated by non-profit corporations. . . . However, many privately operated community hospitals, particularly those in less populated areas, are not organized under the state's general non-profit corporation act and are therefore currently ineligible for such a financing program.

## PURPOSE:

This bill authorizes the creation of non-profit health facilities development corporations to finance privately operated hospitals and related facilities with "tax-exempt" bonds.

The bill analysis characterizes the enactment of the Health Facilities Development Act as necessary to permit for-profit hospitals to take advantage of tax-exempt financing. See note 2, supra. The Development Corporation Act was in existence at the time of the enactment of the Health Facilities Development Act. The perceived necessity for the enactment of the Health Facilities Development Corporation Act despite the existence of the Development Corporation Act indicates the legislative view that the latter does not authorize the financing of hospitals by industrial development corporations. In addition, the removal in 1981 of references to medical research facilities in the Development Corporation Act and the provision in the same session for financing such facilities in the Health Care Development Act indicates a legislative intent to provide for the financing of health care facilities in a statutory framework discrete from that which provides for funding of the kinds of facilities described in the Development Corporation Act. See Henderson v. State, 758 S.W.2d 694 (Tex. App.--Austin 1988, writ dism'd) (when construing acts passed at the same legislative session, the courts will read them as one act).

To summarize, we find that the legislature did not intend the terms "manufacturing and industrial facilities" or facilities "required or suitable for the promotion of commercial development" as used in the Development Corporation Act to encompass medical or health care facilities. Such facilities may not be

financed by bonds issued by industrial development corporations created pursuant to that statute.

## SUMMARY

Hospitals are not "manufacturing or industrial facilities" or facilities "required or suitable for the promotion of commercial development" and may not be financed by bonds issued by industrial development corporations created pursuant to the Development Corporation Act of 1979, as amended.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

JUDGE ZOLLIE STEAKLEY (Ret.)
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by John Steiner
Assistant Attorney General